**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TIMOTHY SLATER and
DEBORAH SLATER,

        Plaintiffs,

vs.                                   Case No. 3:13-cv-345-J-34JBT

HARTFORD INSURANCE COMPANY
OF THE MIDWEST,

        Defendant.

_____

## <u>ORDER</u>

      This case is a breach of contract action brought by property owners Timothy and Deborah Slater ("Slaters" or "Plaintiffs") against insurer Hartford Insurance Company of the Midwest ("Hartford") for failure to pay under the terms of a flood insurance policy.  The case is before the Court on Plaintiffs' Motion for Partial Summary Judgment and Memorandum of Law (Doc. 28; Plaintiffs' Motion), and Defendant, Hartford Insurance Company of the Midwest's Motion for Summary Judgment and Incorporated Memorandum.  (Doc. 36; Defendant's Motion)(collectively "Motions").  The parties have filed responses in opposition to the respective motions, (Doc. 31; Defendant's Response and Doc. 38; Plaintiffs' Response), and, with leave of Court, Plaintiffs have filed a reply in support of their Motion. (Doc. 35; Plaintiffs' Reply).  The Motions are ripe for consideration.

## I.   **Background**

### A.   **The National Flood Insurance Program**

This action arises out of a flood insurance policy issued pursuant to the National Flood Insurance Program.  ("NFIP").  See 42 U.S.C. § 4001 et seq.  The NFIP is a federally supervised and guaranteed insurance program administered by the Federal Emergency Management Agency ("FEMA"), pursuant to the National Flood Insurance Act of 1968, as amended, id. ("NFIA"), and corresponding regulations.[1]  See 44 C.F.R. §§ 59.1-77.2; see also Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast, 492 F. App'x 16, 17-18 (11th Cir. 2012); Carneiro Da Cunha v. Standard Fire Ins. Co. / Aetna Flood Ins. Program, 129 F.3d 581, 583 (11th Cir. 1997).  Pursuant to 42 U.S.C. § 4081(a) of the NFIA, FEMA created the Write-Your-Own Program ("WYO Program"), which allows private insurers to issue and administer flood insurance policies under the NFIP to assist FEMA in its statutory duty to administer the NFIP.  See Newton v. Capital Assurance Co., 245 F.3d 1306, 1308 (11th Cir. 2001)(citing 42 U.S.C. § 4081(a)).  The WYO Program allows private insurance companies ("WYO insurers") to issue Standard Flood Insurance Policies ("SFIP") in their own names, while serving as fiscal agents of the United States.  See 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(f-g)(the "Arrangement"); see also Flamingo S. Beach, 492 F. App'x at 18; Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1339 (11th Cir.

---

[1]   The NFIA authorizes FEMA "to prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid for any damage to or loss of property which is covered by flood insurance made available under the provisions of this chapter."  42 U.S.C. § 4019(a).

2007).[2]  Under the WYO Program, "the federal government underwrites the policies and private WYO carriers perform significant administrative functions including 'arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies.'" Campo v. Allstate Ins. Co., 562 F.3d 751, 754 (5th Cir. 2009)(citation omitted).  However, while these WYO policies "are written by private firms, the federal government acts as the guarantor and reinsurer," and SFIP claims are ultimately paid by the United States Treasurey. Flamingo S. Beach, 492 F. App'x at 18; see also Shuford, 508 F.3d at 1342-33; Newton, 245 F.3d at 1311; 44 C.F.R. Pt. 62, App. A, art. III(D)(1).

Hartford is a WYO Program carrier participating in the NFIP.  (Doc. 36-1; Holmes Aff. ¶¶ 4, 23).  As such, the flood insurance policies issued by Hartford are SFIPs, issued pursuant to the NFIA.  Holmes Aff. ¶ 4.  Thus, Hartford "appears in this action in a fiduciary capacity as the fiscal agent of the United States." Flamingo S. Beach, 492 F. App'x at 18 (citing 44 C.F.R. § 62.23(f-g)); see Shuford, 508 F.3d at 1339, 1343 (citing 42 U.S.C. § 4071(a)(1)).

**B.    The Plaintiffs' Flood Insurance Policy**[3]

On September 30, 2011, the Plaintiffs purchased flood insurance in the form of a SFIP from Hartford for their home in Neptune Beach, Florida.  (Doc. 38-1); see also Holmes Aff. ¶ 3.[4]  The premium for the coverage was $365.00, and Plaintiffs purchased policy limits of

---

[2] The WYO carriers are not, however, general agents of the federal government. See 44 C.F.R. § 62.23(g).

[3]  The following material facts are not in dispute.

[4]   The Affiant, Scott Holmes, is the Claims Technical Director for National Flood Services - StoneRiver ("NFS"), "which is a third-party vendor servicing the flood insurance business for many

(continued...)

$250,000 for the structure and $100,000 for the personal property, both subject to a $1,000 deductible.  (Doc. 38-1); (Doc. 38-2; 08/27/12 First Proof of Loss); Holmes Aff. ¶ 3. The Slaters' SFIP is a Dwelling Form policy, which is published in the Code of Federal Regulations at 44 C.F.R. Pt. 61, App. A(1); (see also Doc. 1-1; Policy).[5]  Under the Policy, an insured must take certain steps in the case of a flood loss.  44 C.F.R. Pt. 61, App. (1), art.VII.J.  Of particular relevance here, the insured must file a Proof of Loss "[w]ithin 60 days after the loss."  Id. art. VII.J.4.  The claimant's Proof of Loss "must be signed and sworn by the insured and provide the insurer with nine specific pieces of information, including the specifications of damaged buildings, detailed repair estimates, and a brief explanation of how the loss happened."  Sutor v. FEMA, Nos. 06-1371, 07-2477, 2009 WL 4268457, at *4 (E.D. Pa. Nov. 23, 2009)(citing 44 C.F.R. Pt. 61, App. A(1), art. VII.J.4.a.- i.  The SFIP provides, in part:

> 4.      Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>
> a.      The date and time of loss;
>
> b.      A brief explanation of how the loss happened;
>
> . . .

---

[4](...continued)
insurance companies which participate as . . . [WYO] insurance carriers participating in the [NFIP]."  Holmes Aff. ¶ 1. Plaintiffs request that the Court disregard Holmes' Affidavit because it "strays into expert opinion," and Defendant never disclosed Holmes as an expert.  See Plaintiffs' Response at 13-14.  Plaintiffs have not filed a motion to exclude the Holmes Affidavit from consideration.  Nonetheless, in considering the pending Motions,  the Court only refers to the Holmes Affidavit with regard to facts within the affiant's personal knowledge, and does not rely on the affiant's legal conclusions.  See Ojeda v. Louisville Ladder, Inc., 410 F. App'x 213, 214-15 (11th Cir. 2010).

[5]  The full text of Plaintiffs' SFIP is found at 44 C.F.R. Pt. 61, App. A(1).  For ease of reference, the Court will refer to the relevant regulation when discussing provisions in the Slaters' SFIP.

> f.      Specifications of damaged buildings and detailed repair estimates;
>
> . . .
>
> i.      The inventory of damaged personal property . . . .

44 C.F.R. Pt. 61, App.A(1), art. VII.J.4.  The SFIP also provides that

> 7.      The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it.  However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

Id. art. VII.J.7.  Additionally, the SFIP provides that

> This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator.  No action we take under the terms of this policy constitutes a waiver of any of our rights.

Id. art.VII.D; see also Shuford, 508 F.3d at 1339; Ambassador Beach Condo. Ass'n, Inc. v. Omaha Prop. & Cas. Ins. Co., 152 F. Supp.2d 1315, 1316 (N.D. Fla. 2001); 44 C.F.R. § 61.13(d)("no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator").

## C.      The Flood and its Aftermath

On June 26, 2012, while the policy was in effect, the Slaters' home was damaged by a flood caused by Tropical Storm Debby.  (Doc. 1; Complaint ¶ 6; (Doc. 5; Answer ¶ 6);[6] Holmes Aff. ¶ 13;  see also 08/27/12 First Proof of Loss; (Doc. 38-8; 08/28/12 Second Proof of Loss).  The Slaters first discovered the flood water inside of their home at 1:00 a.m. on

---

[6]  "A fact admitted by answer is no longer a fact in issue."  Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941).

June 27, 2012.  (Doc. 38-4; Deborah Slater Aff. ¶ 4).  The water remained standing inside

the house for 24 hours.  (Doc. 40-1; Timothy Slater Dep. at 39); (Doc. 36-3; Preliminary

Report).  On June 28, 2012,  in an effort to reduce the moisture, the Slaters placed large fans

and dehumidifiers throughout the house.  (Doc. 28-5; ServPro Job Diary).

Hartford assigned the Slaters' claim to an independent adjusting company on June 27,

2012.  Holmes Aff. ¶ 14.  The adjuster inspected the property on July 1, 2012, and prepared

a Preliminary Report, dated August 23, 2010.  Holmes Aff. ¶¶ 15, 16; Preliminary Report.

The following information was recorded in the Preliminary Report:

| | | |
|---|---|---|
| Date Loss Assigned | 06/27/2012 | |
| Date Insured Contacted | 06/28/2012 | |
| Date Loss Inspected | 07/01/2012 | |
| Date/time water entered building | 06/26/2012 12:00 AM | |
| Date/time water receded building | 06/27/2012 12:00 AM | |
| Time water remained In building | 1 days 0 hours | |
| Water Height or Wave Action | Exterior(Inches) | Interior (Inches) |
| Main Building . . . | 7 | 1 |

Preliminary Report; see also Holmes Aff. ¶ 16.  The adjustor prepared a Flood Damage

Closing Report, also dated August 23, 2012.  (Doc. 36-4; Closing Report); Holmes Aff. ¶ 17.

In it, he "documented a 5-7" outside water line and a 1+" inside water line."  Closing Report.

The adjuster determined that

> The exterior requires pressure washing to the water line.  The
> interior requires flood loss clean up and mildewcide of the floor
> and walls to the water line.  In addition the insulation, drywall,
> and base molding requires [sic] removal and replacement in the
> living room, kitchen, both bedrooms and bathrooms. . . . The

-6-

> cabinets in both bathrooms require removal and replacements,
> and the counter tops and bathrooms sinks will need to be
> removed and reinstalled.  The wood floors are damaged and
> need to be removed and replaced. . . .

Id. He also reported that the Slaters had not provided a list of damaged personal property,

so no losses were attributable to personal property, and further noted that other items in the

home did not appear to be damaged.  Id. The adjuster recommended that Hartford "make

payment to the insured" for the dwelling damages, and wrote that "[w]e have provided the

insured with copies of our estimate. [sic]  A Proof of Loss and NFIP Final Report and will

forward the forms upon receipt."  Id. at 2. Lastly, the adjustor stated that the company had

closed the file on the Slaters' claim. While the Flood Damage Closing Report refers to an

adjuster's estimate of damages, and to a long list of enclosures,[7] the copy of the Closing

Report submitted by Hartford, and cited by the parties, does not include the enclosures or

estimate. (See Doc. 36-4).

On August 27, 2012, the Slaters submitted their first Proof of Loss to Hartford.  The

08/27/12 First Proof of Loss has typewritten damages figures, along with handwritten

numbers. 08/27/12 First Proof of Loss.  The typewritten damages figures conclude with "Net

Amount Claimed under the numbered policy is (Pending Your Flood Carrier's Final Approval)

$13,992.72."  Id.  The handwritten notations appear to say: "Microtech $20,164.31";

"[contractor] Shaycore $103,184.20;" and "Out of Pocket $2500.00."  Also handwritten is

"Policy limits $250,000/100,000."  Id.  The handwritten numbers add up to $125,848.51.  See

---

[7]  The enclosures referenced in the Flood Damage Closing Report are: Service Invoice, Proof of Loss, NFIP RC Proof of Loss, NFIP Final Report, NFIP Preliminary Report, Overhead & Profit Affidavit, NFIP Handbook Receipt, Narrative Closing Report, Valuation, Diagram, Building Estimate, Adjuster's Photographs, Flood Field Survey, and Activity Log.

Plaintiffs' Response at 3.  The 08/27/12 First Proof of Loss is on a form bearing the letterhead of the United States Department of Homeland Security, FEMA, and the National Flood Insurance Program, and is signed and sworn to by the Slaters as of August 27, 2012. 08/27/12 First Proof of Loss.

On August 28, 2012, the Slaters submitted a second Proof of Loss form.  08/28/12 Second Proof of Loss; Holmes Aff. ¶ 25.[8]  Handwritten on the top of the form preceding the typewritten heading "Proof of Loss," is the word "Supplemental."  Id.  In response to the line requesting the "Net Amount Claimed," the 08/28/12 Second Proof of Loss bears the typewritten entry "$125,293.38."  Id.  Additionally, under "Time and Origin," is the handwritten entry: "Flood 26-28 of June 2012."  Id.  The 08/28/12 Second Proof of Loss is signed and sworn to by the Slaters, and dated August 28, 2012.  Id.

Hartford issued a $15,567.63 payment for building damage to the Slaters pursuant to the SFIP, on September 5, 2012.  Holmes Aff. ¶ 18; (Doc. 36-5; 09/05/12 Check).  On September 12, 2012, Hartford sent a letter to the Slaters denying the Slaters' request for additional funds.  (Doc. 36-11; 09/12/12 Hartford Letter); Holmes' Aff. ¶ 29.  Hartford wrote:

> We have received your request to reopen the above referenced flood claim in order to consider additional payment.  The above referenced claim was paid and closed based on the estimate submitted by [the adjuster] and our review of the file.  The receipts submitted exceed the gross loss for the covered flood damages in the amount of $16,567.63.
>
> In order for us to consider additional payments on your claim, please submit all itemized paid receipts and/or documentation for

---

[8]  The copy of the 08/28/12 Second Proof of Loss submitted by Plaintiffs includes 26 pages of attachments setting forth the costs of work done to the house, including a 24 page evaluation report by a company named MicroTech Water Damage Control, Inc, dated August 16, 2012, reporting estimated repairs totaling $103,184.20.  (See Doc. 38-8; Water Damage Report).

> covered flood damages or a signed contractor's room-by-room, line-by-line unit cost estimate that exceeds the amount of $16,567.63. Once we receive the information, we will review it to determine if additional payment can be allowed under the Standard Flood Insurance Policy.
>
> If an item has been omitted from the initial claim payment, please provide the information so that we can review. Until we receive further information from you, the claim file will remain closed.
>
> We have received a signed and sworn Proof of Loss. . . . We are rejecting the signed Proof of Loss in the amount of $125,293.38, pursuant to the Standard Flood Insurance Policy, VII, General Conditions, M. Loss Payment as we have not received the necessary documentation to substantiate the amount being claimed.

09/12/12 Hartford Letter. The letter lists the Date of Loss as being June 26, 2012. Id.

Additionally, the letter advised the Slaters of their right to an administrative appeal of

Hartford's decision to FEMA. Id.[9]

On February 19, 2013, FEMA responded to the Slaters' administrative appeal, which

"questioned the damage assessment and final loss adjustment," and sought "payment of the

supplemental claim for building components, mitigation/remediation services, and incidental

expenses totaling $126,293.38." (Doc. 36-6; 02/19/13 FEMA Letter).[10] FEMA noted that

"Hartford's adjusted loss payment totaling $15,567.63 allowed for pressure washing of the

---

[9]    Where there is disagreement about the amount of flood damages or coverage, the SFIP allows policyholders to appeal to FEMA from any denial of their claims or to contest it in federal court. See 44 C.F.R. § 62.20; id. pt.61, app. A(1), art. VII(R). However, to invoke either procedure for review of the denial of a flood insurance claim, a policyholder must have first filed a timely and compliant proof of loss. See 44 C.F.R. § 62.20; id. pt. 61, app. A(1), art. VII(R).

DeCosta v. Allstate Ins. Co., 730 F.3d 76, 82 (1st Cir. 2013).

[10]   The letter was sent by James Sadler, the Director of Claims for the NFIP, to Mark Goldwich, the Slaters' public adjuster. Holmes Aff. ¶ 19.

exterior, flood loss clean-up of the affected areas, air movers, dehumidifiers, and mildewcide treatments, as well as the replacement of covered building components of like kind and quality, that were directly affected by flood." Id.  While stating that some of the expenses sought by the Slaters were either not covered by the SFIP or "appeared broad and excessive," FEMA concluded that "the concerns conveyed in the appeal merit review and further investigation," and that "the claim is currently under re-evaluation for supplemental payment of covered damages, as warranted." Id.  FEMA referred further adjustment of the Slaters' claim to Hartford. Id.  FEMA also advised the Slaters of their right to file a lawsuit. Id.

On March 15, 2013, an e-mail was sent from Kelly Bauer, identified as "SHR.NFS.ALL.FEMAWAIVERS" to "fema-flaclaims@dhs.gov" regarding the Slaters' "supplemental" claim.  (Doc. 36-7; 03/15/13 Request for Waiver); Holmes Aff. ¶ 21.[11]  The Request for Waiver lists the "Date of Loss" as June 26, 2012, and the "date loss assigned" as June 27, 2012.  03/15/13 Request for Waiver.  It notes that the "supplemental" "POL" was signed and received on August 28, 2012.  The Request for Waiver recounts the flooding as "Exterior water depth at 7", interior at 1" for approximately 1 day." Id.

> Original damages included pressure wash, flood loss clean up, mildewcide treatments, air movers, dehumidifiers, base moulding [sic], wood plank flooring, paint, drywall, wood base cabinetry for the bathroom, and insulation.  Supplemental damages include additional allowance for insulation & drywall, dumpster rental, seal walls, texture for walls, high end ceramic floor tile, wood base cabinetry for the kitchen, allowance to remove and re-install appliances, and high end wood base cabinetry in the bedroom.

---

[11]  Hartford identifies Kelly Bauer as being with "NFS," the third party vendor servicing Hartford's flood insurance business.  See Holmes Aff. ¶¶ 1, 21.  As such, the Plaintiffs contend that the 03/15/13 Request for Waiver was sent by Hartford to FEMA.  Plaintiffs' Response at 4.

Id. As to the requested waiver, the Request states:

> POL late signing: The supplemental POL is late due to the insured needing additional time to gather supporting documentation for their claim as well as time for an engineer to inspect the property and make a determination if flood had damaged the insured property. No consequential damages have been included.

> The flood damages to the insured property are covered under the policy and the Insured is entitled to recover for the damage. We do not believe the Program was jeopardized due to the delay in receipt of documentation. The damages are documented by the adjuster.

Id. The Request lists the "AVC Payable: $29,717.26/Current Amt Requested $16,567.63/ $15,567.63 Previous Claim Pmt(s)" for the building and "ACV Payable: $71.03/Current Amt Requested $0/Previous Claim Pmt(s)" for the contents. Id.

That following Monday, March 18, 2013, FEMA responded that as long as the insured has provided "the actual costs and not estimates," the Request for Waiver was approved. (Doc. 36-8; Waiver). Specifically, FEMA wrote:

> Based on the information you submitted, your request for waiver of the 60 day Proof of Loss policy provision is approved. This limited waiver is for only the amount of the loss and scope of the damages outlined in this request and otherwise does not waive the proof of loss or any other requirement of the Standard Flood Insurance Policy and makes no other comment because of lack of information. If it is later determined that an improper payment was made, the granting of this waiver does not constitute a waiver of the right to seek repayment of any such improperly paid amounts.

Waiver. On March 23, 2013, Hartford issued a second check to the Slaters in the amount of $29,717.26 for building damage (for a total of $45,284.89 for building damage), and $71.03 for contents damage. Holmes Aff. ¶ 22; (Doc. 36-9; 03/23/13 Check).

The Slaters filed this lawsuit on March 29, 2013. <u>See</u> Complaint. Plaintiffs allege in Count I of their Complaint that the cost of repairing the damage to their house caused by the flooding from Tropical Storm Debby exceeds $125,000.00, and that Hartford has breached its obligations under the SFIP by failing to pay the amount properly owed to them under the Policy. <u>Id.</u>[12] The case is currently before the Court on cross motions for summary judgment and partial summary judgment.

## II.    **Standard of Review**

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[13] An issue is genuine when the evidence is such that a reasonable jury could

---

[12] Plaintiffs also brought a second claim alleging professional negligence on the part of Hartford, based on an alleged violation of the standard of care provided by the Florida Administrative Code. <u>See</u> Complaint at 4-5. The Court granted Hartford's motion to dismiss Count II because it raised claims under state law which were preempted by the federal flood insurance regulatory scheme. (Doc. 26; 10/29/13 Order at 7). Count I alleging breach of contract is the only remaining claim.

[13] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

<u>Id.</u> Thus, case law construing the former Rule 56 standard of review remains viable and is applicable

(continued...)

-12-

return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  Hayes v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  At the summary judgment

---

[13](...continued)
here.

stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III.   Discussion

### A.   Hartford's Motion for Summary Judgment (Doc. 36)

Hartford contends that the Slaters are not entitled to any additional recovery under their SFIP because they "failed to submit a timely sworn Proof of Loss to Hartford," and thus, Hartford is entitled to judgment as a matter of law on the Slaters' breach of contract claim. Defendant's Motion at 2, 19, 20.  Specifically, Hartford argues that the 08/28/12 Second Proof of Loss is untimely under Article VII(J)(4) of the SFIP as it was submitted more than 60 days after the date of loss, June 26, 2012. Id. at 11.[14]  Plaintiffs respond by arguing that summary judgment is not appropriate because they complied with the terms of the SFIP by submitting a timely Proof of Loss.  Plaintiffs' Response at 1.  Specifically, Plaintiffs contend that the 08/27/12 First Proof of Loss adequately presented their claim and, alternatively, that FEMA granted a written waiver of the deadline. Id.  Additionally, Plaintiffs argue that Hartford's "repudiation of its own deadlines excused" them from strict deadline compliance, and that they are relieved from the Proof of Loss deadline by the doctrine of equitable tolling. Id.

A Proof of Loss is a statement by the insured informing the insurer - either FEMA or a WYO carrier - of the amount the insured is claiming under the policy. See 44 C.F.R. Pt. 61, App. A(1), art. VII.J.4.  The statement must be signed and sworn to by the insured, and provide the insurer with nine specified pieces of information, including the specifications of damaged buildings, detailed repair estimates, and a brief explanation of how the loss

_____

[14]  Hartford neither acknowledges or makes reference to the 08/27/124 First Proof of Loss.

happened.  See id. at art. VII.J.4.a.-i.  "[S]trict compliance with the provisions of federal flood insurance policies is required because payments are drawn from the federal treasury." Shuford, 508 F.3d at 1343; see also Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1318 (11th Cir. 2003)("the insured must adhere strictly" to the requirements of an SFIP "before any monetary claim can be awarded against the government"); Richardson v. Am. Bankers Ins. Co., 279 F. App'x 295, 298 (5th Cir. 2008)(insured must "show prior compliance with all of the policy's requirements, including the [proof of loss] requirement").  As such, failure to file a timely Proof of Loss prohibits an insured from recovery.  Sanz, 328 F.3d at 1317-18 (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947)).  However, the Proof of Loss requirement may be waived, but to be effective, the waiver must be made by the Federal Insurance Administrator in writing.  See Sanz, 328 F.3d at 1318-19; see also; 44 C.F.R. Pt. 61, App. A(1), art. VII.D; 44 C.F.R. § 61.13(d).

### 1.    Timeliness of Proof of Loss

#### a.    06/27/12 First Proof of Loss

Plaintiffs argue that their submission of the 08/27/12 First Proof of Loss, with the handwritten entry reflecting "the same dollar amounts" as that presented in the 08/28/12 Second Proof of Loss, "adequately presents all of the Slaters' losses," and thus, creates "a genuine issue of material fact regarding whether the second proof of loss was even necessary, because a reasonable jury could find that the first document put Hartford on notice about all of the Slaters' damages."  Plaintiffs' Response at 5-6.  They note that the "package of information sent the following day" in the 08/28/12 Second Proof of Loss, included contractor estimates to support the numbers handwritten by Timothy Slater on the

08/27/12 First Proof of Loss. Id. Hartford did not mention the 08/27/12 First Proof of Loss in its papers, arguing only that the 08/28/12 Second Proof of Loss was untimely.

Preliminarily, Plaintiffs contend that Hartford incorrectly begins counting the 60-day Proof of Loss deadline on June 26, 2012, arguing that "[t]his is not the proper date because the policy states to start counting 'after' the flood; and Hartford states that the floodwaters did not recede until June 27, 2012." Plaintiffs' Response at 12. As such, according to Plaintiffs, "the earliest possible day to start counting would be June 28, 2012," the day after the date Hartford documents that the flooding ended. Id. Under this scenario, the 60-day time limit would have expired on Sunday, August 26, 2012. Plaintiffs also argue that the record evidence supports a conclusion that water was still standing in their house in the early morning hours of June 28, 2012, which would mean that June 29, 2012 would be "the earliest day to start counting." Id. As support, the Slaters cite to Timothy Slater's deposition testimony in which he stated that "there was moisture in the home months after, but we cleaned all the standing water as quickly as we could, so within 24 hours for standing water sounds right." (Doc. 40-1; T. Slater Dep. at 39). Under this scenario, the 60-day deadline would fall on Monday, August 27, 2012, which was the date that the Slaters executed the 08/27/12 First Proof of Loss.

The SFIP requires that a claimant provide the insurer with a Proof of Loss "within 60 days after the loss." 44 C.F.R. Pt. 61, App. A(1), art. VII.J.4 and 7. Neither party cited to any legal authority providing guidance on the computation of the SFIP 60-day Proof of Loss requirement, and the Court was unable to locate any. However, Plaintiffs cite to the decision in Smith v. Nat'l Flood Ins. Program of FEMA, 156 F. Supp.2d 520 (E.D. Pa. 2001), in which

the court applied the method of computation provided by Rule 6(a), Federal Rules of Civil Procedure, for computing the NFIA deadline for a claimant to bring suit in federal court ("'within one year after the date of mailing of notice of disallowance or partial disallowance by the Director'"). Smith, 156 F. Supp.2d at 522-23 (quoting 42 U.S.C. § 4072).  In doing so, the court observed that the Third Circuit Court of Appeals had applied the Rule 6(a) method of computation to determine the end of the statutory limitations period applicable to the Federal Tort Claims Act, which provides that an action must be brought "within two years after such claim accrues," 28 U.S.C. § 2401(b), and found that "the same reasons" apply to the one-year statute of limitations computation in the NFIA.  Id. at 523 (citing Frey v. Woodard, 748 F.2d 173, 175 (3d Cir. 1984)). Thus, the Smith court adopted the Rule 6 time computation methodology for ascertaining the end point of the NFIA one-year statute of limitations that "exclude[s] the day of the event that triggers the period," and includes the last day of the period unless the last day is a Saturday, Sunday, or legal holiday, in which case "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Rule 6(a)(1).

The Eleventh Circuit has observed that it has "long recognized as a general policy a legislative intent to apply Rule 6(a) to all federal statutes enacted or amended after the adoption of Rule 6(a) . . . . [and that] [t]his policy generally prevails unless the statute in question itself reflects a contrary intent." Am. Canoe Ass'n, Inc. v. City of Attalla, 363 F.3d 1085,1086 (11th Cir. 2004)(citations omitted)(applying Rule 6 computational analysis to Clean Water Act); see also Maahs v. United States, 840 F.2d 863, 865-66 (11th Cir. 1988)(Rule 6 computation of time applied to FTCA two-year requirement for claim to be

brought such that the counting begins on the day after the cause of action arose and ends on the next day that is not a Saturday, Sunday, or legal holiday).  In light of this authority, the Court determines that the Rule 6(a) computational analysis applies to the 60-day Proof of Loss deadline set forth in the NFIA.   If the date of the loss is set at June 26, 2012, then the 60-day time limit for the Slaters to submit a timely Proof of Loss would have fallen on Saturday, August 25, 2012.  If the date of the loss was June 27, 2012, when the Slaters discovered the flooding in their house and the floodwaters receded, then the 60-day deadline would have been Sunday, August 26, 2012, and if the date of the loss is June 28, then the sixtieth day would have fallen on Monday, August 27, 2012.  The 08/27/12 First Proof of Loss was signed and verified on Monday, August 27, 2012.  Thus, under each of the foregoing scenarios, the 08/27/12 First Proof of Loss was timely.[15]   However, it appears that the 08/27/12 Second Proof of Loss, if considered alone, may be untimely.

### b.    08/28/12 Second Proof of Loss as a Supplemental Proof of Loss

The next issue might well be whether the 08/27/12 First Proof of Loss, standing alone, constitutes an adequate Proof of Loss submitted in compliance with the requirements of the

---

[15]   The Court declines to accept Plaintiffs' invitation to extend the date of their loss to June 30, 2012 based upon FEMA's August 28, 2012 memoranda regarding the "adjusted date of loss" from Tropical Storm Debby.  See Plaintiffs' Response at 9 (citing Doc. 38-3; 08/28/12 FEMA Memo re: Tropical Storm Debby).  In the memoranda, FEMA observed that "Tropical Storm Debby produced torrential rain and widespread flood damage in the state of Florida," and assigned the "dates of loss" as being "June 23, 2012-June 30, 2012."  08/28/12 FEMA Memo re: Tropical Storm Debby.  Nothing about the memoranda suggests that all claimants may assert a June 30, 2012, date of loss.  Indeed, the Slaters' date of loss falls squarely within FEMA's parameters for the storm in Florida.

Additionally, the Slaters may not be excused from the Proof of Loss requirement because their 08/28/12 Second Proof of Loss missed the 60-day deadline by one day, and thus constituted a de minimis error.  See Response at 11-15.  Substantial compliance with the requirements of the SFIP is not sufficient.  Rather, the insured must completely satisfy the Proof of Loss requirement.  See Sanz, 328 F.3d at 1317.

SFIP.  See 44 C.F.R. Pt. 61, App. A(1), art. VII.J.1-9.  However, neither party has made this assertion.   Instead, Plaintiffs contend that the 08/28/12 Second Proof of Loss, when considered with the 08/27/12 First Proof of Loss, satisfy the Proof of Loss requirement.

Although the SFIP makes no reference to either permitting or prohibiting supplemental claims, it does require that a Proof of Loss must be filed within 60 days.  As such, some courts have stated that a supplemental proof of loss must also be submitted within 60 days of the loss.  See Ambassador Beach Condo. Ass'n, 152 F. Supp.2d at 1316-17.  Additionally, courts have held that after the 60 day period expires, "the insured may not seek additional damages not reflected in the Proof of Loss."  Oaks v. Allstate Ins. Co., No. 05-191-REW, 2006 WL 3328179, at *5 (E.D.Ky. Nov. 14, 2006)("Plaintiff may not avoid enforcement of the proof of loss requirement by 'supplementing' or 'amending' his original statement after the 60 day period expires"); Smith Pierre v. Fid. Nat'l Indem. Ins. Co., No. 11-60298-CIV, 2011 WL 3924178, at *3 (S.D. Fla. Sept. 7, 2011)("Plaintiff's original proof of loss cannot fulfill his obligation to submit a proof of loss for amounts not covered by the original proof of loss"); see also Howell v. State Farm Ins. Co., 540 F. Supp.2d 621, 627  (D.Md. 2008)(plaintiffs "are limited to benefits they claimed in timely proofs of loss, even if they 'consistently disputed the amounts [that] the defendants should pay under the policy'" (citation omitted)).  Notably, while these cases appear to state a general rule that any supplemental proof of loss must be submitted within the SFIP 60-day time period, the supplemental claims in the cases were ultimately rejected for other reasons.  For example, in Ambassador Beach and Howell, the court rejected the supplemental claims because the plaintiff had accepted full payment for the amount sought in the original proof of loss, but then sought additional payments not

included in a timely proof of loss.  See Ambassador Beach Condo. Ass'n, 152 F. Supp.2d at 1317; Howell, 540 F. Supp.2d at 627.  In Smith-Pierre, 2011 WL 3924178, at *3; Oaks, 2006 WL 3328179, at *2, 5; and Sutor, 2009 WL 4268457, at *2, 4, the supplemental claims were rejected because they sought amounts not included in the timely proof of loss, and for which the claimants failed to submit a proof of loss, or failed to submit a signed and sworn proof of loss.

There is authority, however, for the proposition that a supplemental proof of loss that is submitted out of time, may be considered along with a timely proof of loss, if the supplemental submission makes a claim that is identical to that submitted in the timely proof of loss.  For example, in Stogner v. Allstate Ins. Co., No. 09-3037, 2010 WL 148291, at *1 (E.D. La. Jan. 11, 2010), the plaintiff suffered flood losses in 2005 and 2008. 2010 WL 148291, at *1.  When the plaintiff submitted a proof of loss for the 2008 incident, the insurer disputed the documentation regarding whether the 2005 damage had been repaired and paid only $6,171.  The Plaintiff filed suit.  The court recognized that while "it is clear that supplementary proofs of loss are required when a claimant requests more in the supplementary claim than in the original claim . . . if the same amount is claimed, and only the decision is disputed, additional proofs of loss may not be necessary."  Id. at *4 (emphasis added).  The Stogner court denied the insurer's motion for summary judgment based upon the proof of loss because it was not apparent from the record whether the lawsuit was for "the same amount" claimed in the 2008 proof of loss (but not paid in full), or if it was for more, which would require another proof of loss.  Id.

-20-

Similarly, in <u>Young v. Imperial Fire & Cas. Ins. Co.</u>, No. 13-5246, 2014 WL 1456408 (E.D. La. April 15, 2014), the insured submitted three signed and sworn Proof of Loss statements for building damages, plus a detailed estimate of damages from a public adjuster to a WYO insurer.  2014 WL 1456408, at * 1, 3.  In the initial timely Proof of Loss, plaintiffs made a claim for $175,000, which was the policy limit of building coverage minus the deductible.  Plaintiffs also stated in the initial Proof of Loss that the "actual cash value, full cost of replacement or repair and applicable depreciation" was "'undetermined.'"  <u>Id.</u> at *1. The damages report, which estimated the total amount of damages to be $260,635.83, was submitted after the 60-day Proof of Loss period had expired.  <u>Id.</u>  The accompanying cover letter stated that the report "was an estimate of damages to supplement" the insured's claim. <u>Id.</u>  When the SFIP insurer declined to pay the policy limits for building losses, the insureds filed suit against the insurer.  The insurer argued that it was entitled to summary judgment because the plaintiff insureds did not submit a timely Proof of Loss for building damages that complies with the requirements of the SFIP.  <u>Id.</u>  The insurer argued that the insured's submissions were inadequate because the detailed estimate was not submitted with a signed Proof of Loss form, and the estimate was not separately signed and sworn by the insureds. Additionally, the WYO insurer argued that the claimed amount of $175,000 and the estimated damages amount of $260,235.83 made it "impossible to know the actual amount of plaintiffs' claim."  <u>Id.</u> at 3.  The court denied the insurer's motion for summary judgment, determining that all of the insured's Proof of Loss forms, "taken together with [the adjuster's] estimate that was sent [after the 60-day deadline], constitute a complete Proof of Loss that complies with the SFIP."  <u>Id.</u>  The court further determined the Proof of Loss forms "taken together" with the

adjuster's report "clearly state that plaintiffs' cost of repair is the amount estimated by [the adjuster's] detailed report, $260,235.83, and that plaintiffs claim their policy limit on building coverage, minus the deductible, which is $175,000," permitting the SFIP insurer to evaluate the insureds' claim for their policy limits based upon the damages and costs presented in the detailed report.  Id. at *4; but see Sun Ray Village Owners Ass'n v. Old Dominion Ins. Co., 546 F. Supp.2d 1283, 1292 (N.D. Fla. 2008)(summary judgment for WYO insurer where insured failed to provide any support for its claimed loss and insurer had no basis by which to evaluate the merits of insured's asserted losses).

Here, the 08/27/12 First Proof of Loss and the 08/28/12 Second Proof of Loss, when construed in favor of the Slaters, both refer to more than $125,000.00 in property damages. Hartford does not argue that the 08/27/12 First Proof of Loss Form was either untimely or deficient.  Indeed, Hartford does not even discuss the 08/27/12 First Proof of Loss Form. Unlike the claimant in Sun Ray Village, who failed to submit any support for or documentation to support its claimed loss under the SFIP, 546 F. Supp.2d at 1286-87, 1289, 1292, the Slaters submitted a detailed Water Damage Report with their 08/28/12 Second Proof of Loss. Accordingly, summary judgment is due to be denied.  See Young, 2014 WL 1456408, at *1, 3.

### 2.    The Administrator's Waiver

"[F]ailure to file a proof of loss bars recovery absent an express written waiver of the proof-of-loss requirement by the Administrator."  Shuford, 508 F.3d at 1343.  The SFIP does not allow for constructive waiver.  See Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 811 (3d Cir. 2005).  Rather, a waiver argument is viable only where there is an actual written

waiver from the Federal Insurance Administrator. Sanz, 328 F.3d at 1318-19; see also 44 C.F.R. Pt. 61, App. A(1), art. VII.D.   In order for a communication from the FEMA Administrator to waive the proof-of-loss requirement, "the waiver must be apparent from the face of the document itself." Howell, 540 F. Supp.2d at 628.  (FEMA's written notice of its willingness to reconsider insureds' claims did not expressly waive the proof of loss requirement).  Thus, payment, and an insurer's processing of a claim or payment of a portion of a claim does not constitute a waiver of the proof of loss requirement, see Greer v. Owners Ins. Co., 434 F. Supp.2d 1267, 1277-78 (N.D. Fla. 2006), and an insurer does not "constructively waive" the proof-of-loss requirement by processing a claim, or denying a claim for a reason other than failure to file a timely proof of loss.  See Shuford, 508 F.3d at 1343 (citing Sanz, 328 F.3d at 1318-19).

Plaintiffs argue that the FEMA administrator waived the 60-day Proof of Loss requirement in the March 18, 2013 communication issued in response to Hartford's March 15 Request for Waiver.  Plaintiffs' Response at 8.  Plaintiffs contend that Hartford's 03/15/13 Request for Waiver mentions Plaintiffs' supplemental proof of loss (which listed $125,293.38 in claims) four times, and includes a list of specified damages that were all presented in the 08/28/12 Second Proof of Loss.  Id.  Plaintiffs argue that

> In light of the fact that (i) the FEMA waiver applies to "the amount of the loss and scope of damages outlined in the request", and (ii) the list of damages outlined in the request is simply a restatement of the damages outlined in page 2 of the supplemental proof of loss' supporting documents . . . , and (iii) the request references the supplemental proof of loss 4 times, there is, at minimum, a material question of fact regarding the scope of the waiver.

Id. at 8-9.  Plaintiffs further contend that the reference to $29,717.26 in the 03/15/13 Request for Waiver is "ambiguous."  Id.

Hartford cites to the language of the Waiver which it argues is self-limiting to "'only the amount of the loss [$29,717.26] and scope of the damages outlined in the request and otherwise does not waive the proof of loss or any other requirement of the Standard Flood Insurance Policy,'" and does not provide a general waiver of the SFIP Proof of Loss requirement.  Defendant's Motion at 10, 12, 19.  According to Hartford's flood insurance claims servicer Scott Holmes, Claims Technical Director with NFS, Hartford, through NFS "had requested a waiver from FEMA to pay the Plaintiffs' supplemental flood claim of $29,717.26 on March 15, 2013."  Holmes Aff. ¶ 21.

To be sure, FEMA and Hartford's agreement to reopen the Slaters' file to further consider the Slaters' claim is not, in and of itself, an express waiver of the SFIP Proof-of Loss requirement.  See Sanz, 328 F.3d at 1318-19.  However, the Administrator here did issue an express waiver in writing.  See Waiver.  The issue is whether that March 18, 2013 Waiver may be construed as a matter of law as waiving the Proof of Loss requirement only in the amount of $29,717.26, or as to the full scope of damages described in the 08/28/12 Second Proof of Loss.

In Shuford, 508 F.3d at 1342, the Eleventh Circuit construed the plain language of a waiver by the FEMA administrator which extended the post-Hurricane Katrina Proof of Loss deadline requirement from 60 days to one year.  The court rejected the claimant's argument that the Administrator's use of the word "may" in the phrase "'a policyholder may submit to the insurer a proof of loss,'" meant that the claimant had a choice of whether to challenge the

WYO denial decision, and that the filing of the proof of loss was optional, because the claimant's proposed construction would render other parts of the limited waiver superfluous. 508 F.3d at 1342; see also e.g. Howell, 540 F. Supp.2d at 628 (court concludes after reviewing the language of FEMA bulletin implementing a claim review process, that the "document is insufficient as a matter of law to constitute an express waiver under the terms of the SFIP;" "in order for us to conclude that FEMA bulletin waived the proof of loss requirement, the waiver must be apparent from the face of the document itself"); Goodman v. Fid. Nat'l Prop. & Cas. Ins. Co., No. 3:06cv93/MCR/EMT, 2007 WL 1521479, at *3 (N.D. Fla. May 23, 2007)(concluding what a "reasonable interpretation" of the use of the word "may" in administrator's post-Hurricane Katrina waiver by "reading the memorandum in its entirety."). However, in Provenza v. State Farm & Cas. Ins. Co., No. 06-7319, 2007 WL 1655567 (E.D. La. June 6, 2007), the court determined that a post-Hurricane Katrina FEMA waiver reference to "may" "could be ambiguous to a claimant such that summary judgment against a claimant who relied on the waiver is inappropriate," and that a waiver may be "too ambiguous to support summary judgment against a claimant who may have been confused by it." Id. Ultimately, the Fifth Circuit Court of Appeals resolved the issue, determining as a matter of law that FEMA's use of the word "may" in its post-Hurricane Katrina waiver did not generally waive the proof of loss requirement. See Marseilles Homeowners Condo. Ass'n, Inc. v. Fid. Nat'l Ins. Co., 542 F.3d 1053, 1056-57 (5th Cir. 2008)(citing Shuford, 508 F.3d at 1342); see also Provenza v. State Farm Fire and Cas. Co., No. 06-7319, 2008 WL 4938451, at *1-2 (E.D. La. Nov. 17, 2008)(noting that the court had granted subsequent motion for

summary judgment in favor of WYO insurer after Fifth Circuit concluded that there is no ambiguity regarding the post-Katrina waiver of the proof of loss requirement).

By approving the Request for Waiver and stating that "[t]his limited waiver is only for the amount of the loss and the scope of the damages outlined in this request," the Administrator's Waiver is ambiguous.   On the one hand, The Request for Waiver refers to "Building R/C: $29,717.26/Current Amt Requested" and "ACV Payable: $29,717.26/Current Amt Requested $16,567.63/ $15,567.63 Previous Claim Pmt(s)".   On the other hand, the Request for Waiver does specifically refer to the "08/28/2012 - supplemental" Proof of Loss three times, and to "Supplemental damages" which "include additional allowance for insulation & drywall, dumpster rental, seal walls, texture for walls, high end ceramic floor tile, wood base cabinetry for the kitchen, allowance to remove and re-install appliances, and high end wood base cabinetry." Request for Waiver.  The Request for Waiver justified the delay in submitting the "supplemental POL," which appears to be the 08/28/12 Second Proof of Loss, as being late "due to the insured needing additional time to gather supporting documentation for their claim as well as time for an engineer to inspect the property and make a determination if flood had damaged the insured property." Id.  Even if the "amount of the loss" is construed to be the $29,717.26 referenced in the Request for Waiver, the Administrator's Waiver states that it applies to "the amount of the loss and the scope of the damages" in the Request for Waiver.  The "scope of the damages" appears to be those enumerated in the Request for Waiver, and set forth in the 08/28/12 Second Proof of Loss which is mentioned multiple times in the Request for Waiver.  As such, the scope of the Administrator's express written waiver is ambiguous on its face.  Construing the facts in favor

of the Slaters, as the nonmoving party as well as the insured, summary judgment in favor of Hartford with regard to the Administrator's Waiver of the 60-day Proof of Loss requirement, is due to be denied.

### 3.   Repudiation

The Slaters argue that Hartford repudiated the SFIP by failing to send an adjuster to inspect the property by June 29, 2012, within 48 hours of the Slaters giving notice to Hartford of the flood, as required by the FEMA claims manual.  Plaintiffs' Response at 10-11 (citing (Doc. 38-6; NFIP Adjuster Claims Manual ¶ 2.i).[16]  Plaintiffs' contend that "Hartford's repudiation of its own deadlines excuses any alleged supplemental proof of loss deadline error."  Id. at 11.

The doctrine of repudiation is a "legal" as opposed to an equitable doctrine.  Studio Frames Ltd. v. Standard Fire Ins. Co, 369 F.3d 376, 381 (4th Cir. 2004).  Repudiation, "sometimes called 'anticipatory breach'" occurs

> when one party repudiates its obligations under a contract, the unperformed contractual rights and duties of the contract cease to be binding on the non-repudiating party altogether. Restatement (Second) of Contracts § 253(2) & cmt. b (explaining that "one party's repudiation discharges any remaining duties of performance of the other party with respect to the expected exchange")(emphasis added). . . . [A]fter one party to a contract repudiates its contractual rights and obligations, the right of the non-repudiating party to recover on the contract without first performing conditions precedent "is given to the non-repudiating party by the law, irrespective of the repudiating party's wishes. Williston on Contracts § 39:38 (Richard A. Lord, ed., 4th ed.2000)(emphasis added).

---

[16]   The NFIP Claims Manual is incorporated by reference into the FEMA regulations.  Suopys, 404 F.3d at 811 (citing 44 C.F.R. § 62.23).

Studio Frames, 369 F.3d at 381.  "Repudiation" is "a '"statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damage for total breach."'"  Evanoff v. Standard Fire Ins. Co., 534 F.3d 516 (6th Cir. 2008)(quoting Mobile Oil Exploration & Producing Southeast v. United States, 530 U.S. 604, 608 (2000)(quoting Restatement (Second) of Contracts § 250 (1979))).

The Eleventh Circuit has not specifically addressed the question of whether the doctrine of repudiation can apply to an SFIP.  However, the Fourth Circuit has held that it might apply.  Studio Frames, 369 F.3d at 381 ("Here we must consider . . . whether the otherwise binding requirement that [the insured] file a proof of loss could be legally excused by the repudiation of the SFIP by [the insured]" and applying federal common law).  In Studio Frames, the WYO insurer informed a lessee attempting to make a flood insurance claim, that a tenant cannot purchase SFIP building coverage for a building he does not own.  The insurer attempted to return the premiums paid by the lessee.  On these facts, the court held that "the policy at issue here may be repudiated," and remanded the case to the district court to determine whether the insurer's conduct and statements actually did amount to a repudiation.  Id. at 383 (emphasis added).  The Second Circuit Court of Appeals has declined to adopt the Fourth Circuit's Studio Frames reasoning, and concluded that it is "at best questionable whether the doctrine of repudiation has any application in the context of policies issued under the NFIP."  Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 177 (2d Cir. 2012); see also Gunter v. Farmers Ins. Co., 736 F.3d 768, 775 (8th Cir. 2013)(recognizing split among United States Circuit Court of Appeals as to whether the doctrine of repudiation applies to the SFIP).

Assuming for discussion purposes that the doctrine of repudiation might be applicable to an SFIP, in order to repudiate an insurance policy, "the insurer must renounce the policy rather than simply deny[ ] the claim under the policy." Jacobson v. Metro. Prop. & Cas. Ins. Co., No. 1:09-CV-0158 (LEK/DRH), 2010 WL 5391530, at *5 (N.D.N.Y. Dec. 21, 2010), aff'd, 672 F.3d 171 (2d Cir. 2012); see also Gunter, 736 F.3d at 775 (insurer did not repudiate SFIP where it "did not disavow the policy, contend that it was not bound by the policy's terms, or attempt to return . . . the premiums paid under the policy"). Indeed, a denial of a claim for benefits under an insurance policy does not constitute repudiation." Richardson, 279 F. App'x at 299. Additionally, where the dispute between the insurer and the insured revolves around the amount of loss and not the coverage itself, the insurer has not repudiated the contract. See Norman v. Fid. Nat'l Ins. Co., 354 F. App'x 934, 937 (5th Cir. 2009). Here, even if Hartford "materially breached" the SFIP by failing to promptly send an adjustor, Hartford continued to act on the contract, and the Slaters elected to continue the contract by claiming and receiving additional benefits. Thus, Hartford's allegedly late inspection and report does not excuse the Slaters from complying with the SFIP Proof of Loss 60-day requirement. See Howell, 540 F. Supp.2d at 629-30. Indeed, although Hartford missed deadlines, the parties continued with the contract and the dispute is over the amount of benefits awarded, not over whether any benefits are due. As such, even if repudiation can be raised in the context of an SFIP, Plaintiffs have failed to establish the applicability of the doctrine of repudiation to the facts of this case.

### 4.    <u>Equitable Estoppel Not Available</u>

Moreover, Hartford is not estopped from denying coverage based upon its own delays, the Administrator's acceptance of a Supplemental Proof of Loss, or its denial of benefits for reasons unrelated to the timeliness of the Supplemental Proof of Loss.  The Eleventh Circuit has observed that "equitable estoppel is unavailable in a claim against the government for funds from the public treasury." <u>Shuford</u>, 508 F.3d at 1342-43 (citing <u>Office of Pers. Mgmt v. Richmond</u>, 496 U.S. 414, 424-34 (1990)(holding that the Appropriations Clause of the United States Constitution prohibited monetary payments from the federal treasury that have not been authorized by Congress)).  Because a WYO insurer is "acting as a fiscal agent of the United States, . . . [a] suit for benefits under the National Flood Insurance Program raises the same concerns, under the Appropriations Clause, as a suit against a governmental entity because benefits under the National Flood Insurance Program are paid from the federal treasury."  <u>Id.</u> at 1343 (citing 42 U.S.C. § 4071(a)(1)); <u>see also</u> <u>Sanz</u>, 328 F.3d at 1319-20.

For example, in <u>Dawkins v. Witt</u>, 318 F.3d 606 (4th Cir. 2003), the court declined to estop the insurer from first asserting the 60-day proof of loss deadline requirement as a defense to an insured's breach of contract claim regarding unpaid flood insurance claims, even where it was undisputed that "FEMA accepted the plaintiffs' first proof of loss after the 60 day period expired, that [the insurer's adjuster] stated that the 60 day requirement would not be enforced, that FEMA continued to address the claim well after the 60 day period expired, and the Federal Insurance Administrator did not provide an express written waiver of the 60 day requirement." <u>Dawkins</u>, 318 F.3d at 610; <u>see also</u> <u>e.g.</u> <u>Gunter</u>, 736 F.3d at 774. Moreover, the Eleventh Circuit has observed that even if estoppel is available, "it is warranted

only if affirmative and egregious misconduct by government agents exists." <u>Sanz</u>, 328 F.3d at 1319-20; <u>see also</u> <u>Dawkins</u>, 318 F.3d at 611-12.  Thus, even assuming that equitable estoppel is available in the SFIP context, the Slaters have not adduced any evidence of "'affirmative and egregious misconduct'" on the part of Hartford, such that a claim of equitable estoppel might be available.  <u>See</u> <u>Shuford</u>, 508 F.3d at 1343 (quoting <u>Sanz</u>, 328 F.3d at 1319-20).

### B.   **Plaintiffs' Motion for Partial Summary Judgment   (Doc. 28)**

In their Motion for Partial Summary Judgment, the Slaters seek a determination, as a matter of law, that Hartford's SFIP "provides coverage for mold damage in Plaintiffs' home." Plaintiffs' Motion at 1.  The Slaters argue that "[a]s a result of the storm, portions of the home were damaged by mold and mildew, although the extent of the damage is disputed." <u>Id.</u> at 1-2.  The Slaters contend that the SFIP's mold exclusion, which does not insure for loss caused by mold or mildew that results from any condition "[s]ubstantially confined to the dwelling" or within the insureds' control, including "[f]ailure to inspect and maintain the property after the flood recedes," does not apply. <u>Id.</u> at 2 (citing 44 C.F.R. Pt. 61, App. A(1) art. V.D.4).  Because they properly mitigated their mold and mildew loss by running large fans and dehumidifiers less than 48 hours after the flood occurred, the Slaters argue that the mold and mildew exclusion does not apply. <u>Id.</u> at 5.  Hartford responds asserting that although the Slaters "attempted to mitigate their loss following the flooding, as they were required to do," the company they hired to perform the mitigation "did a less than adequate job in its remediation." Defendant's Response at 2.  Additionally, Hartford notes that it paid the Slaters $45,284.89 on their claim for property damage. <u>Id.</u> at 2.  Hartford contends that "[i]t is up to

the finder of fact to determine" if the mold in the Slaters' home meets the conditions of the SFIP exclusion. Id. at 4.

On this record, the Court concludes that there are genuine and disputed issues of material fact that preclude entry of partial summary judgment in Plaintiffs' favor regarding the applicability of the SFIP mold and mildew exclusion exception in this case. First, the evidence is disputed and inconclusive as to whether the extent of the alleged mold and mildew damage was within the Plaintiffs' control, and whether Plaintiffs adequately "maintain[ed] the property after the flood recede[d]." See 44 C.F.R. Pt. 61, App. A(1), art. V.D.4.b.(3). Additionally, factual issues exist as to the amount of the Slaters' $125,293.38 claim that they attribute to mold and mildew damage,[17] and whether any of the $45,284.89 payment made by Hartford was for mold and mildew loss. Accordingly, Plaintiffs' Motion for Partial Summary Judgment is due to be denied.

Upon due consideration, it is hereby

**ORDERED**:

1.      Defendant Hartford Insurance Company of the Midwest's Motion for Summary Judgment and Incorporated Memorandum (Doc. 36) is **GRANTED IN PART and DENIED IN PART**, as follows:

A.      Hartford's Motion is **GRANTED** only to the extent that Plaintiffs assert 1) that Hartford repudiated the Standard Flood Insurance Policy that it issued to the Slaters, and 2) that Hartford is estopped from denying the Plaintiffs' claim.

---

[17]   While the record includes the Slaters' 08/28/12 Second Proof of Loss and attached 24 page Water Damage Report, the Slaters do not cite to, and the Court is unable to ascertain, which of the estimated repairs are affected by the SFIP mold and mildew exclusion.

B.      Hartford's Motion is **DENIED** in all other respects.

2.      Plaintiffs' Motion for Partial Summary Judgment and Memorandum of Law (Doc.

28) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 13th day of June 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc12
Copies to:
Counsel of Record